**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**COVINGTON**

**CRIMINAL ACTION NO. 25-71-S-DLB-CJS**

**UNITED STATES OF AMERICA** **PLAINTIFF**

**V.** **PLEA AGREEMENT**

**RYAN L. COOLEY** **DEFENDANT**

* * * * *

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 2 of the Superseding Indictment, charging distribution of fentanyl resulting in death, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Pursuant to Rule 11(c)(1)(A), the United States will move to dismiss Count 1 of the Superseding Indictment and the original Indictment at sentencing.

2. The essential elements of Count 2 are:

(a) The Defendant knowingly or intentionally distributed a mixture of substance containing a detectable amount of fentanyl, a Schedule II controlled substance;

(b) The Defendant knew at the time of distribution that the substance was a controlled substance;

(c) The individual referred to as "A.L.T." in the Indictment would not have died but for the use of that substance distributed by the Defendant; and

(d) The Defendant was part of the distribution chain that placed that substance in the hands of A.L.T.

3. As to Count 2, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

(a) On May 21, 2025, the Defendant sold approximately 50 blue pressed fentanyl pills to Nicholas Sturgill, a former co-worker, at the Speedway gas station at 2857 River Road in Cincinnati. After obtaining the pills from the Defendant, Sturgill transported those pills to the residence in Kenton County, Kentucky, he shared with A.L.T. so that he and A.L.T. could use them. Sturgill purchased pressed fentanyl pills from the Defendant approximately 30 times in the preceding year for his and A.L.T.'s use; most of the transactions were for 10 pills, but some were for as many as 50 pills.

(b) Sturgill left for work at approximately 9:30 a.m. on May 22, 2025. Sometime later, A.L.T. consumed some of the fentanyl pills provided by the Defendant and died. When Sturgill returned home after work, he found A.L.T. unresponsive in a bathroom in the residence. He called 911 and reported the overdose.

(c) Agents searched the bathroom where A.L.T. was discovered and recovered a syringe from the bathroom sink and a spoon with blue powder residue from the bathroom sink drawer. They also recovered approximately 45 blue pressed pills along with other items of drug paraphernalia from the residence. Lab testing of the pills and the residue showed that each contained fentanyl and xylazine. Fentanyl is a Schedule II controlled substance and xylazine is a sedative commonly used as a veterinary medicine and a cutting agent for fentanyl.

(d) Toxicology showed high levels of fentanyl and xylazine in A.L.T.'s blood and the medical examiner who conducted an autopsy of A.L.T. concluded that the cause of death was an overdose of fentanyl and xylazine. According to the medical examiner, A.L.T. would not have died if not for the ingestion of fentanyl and xylazine.

(e) Sturgill admitted his history of obtaining pressed fentanyl pills from the Defendant, including the transaction on May 21, 2025. Sturgill admitted that he obtained the pills for his and A.L.T.'s use. He admitted that the blue pressed fentanyl pills recovered from their residence were from the transaction with the Defendant on May 21, 2025, and that these were the pills that caused A.L.T.'s death.

(f) Sturgill showed agents text messages on his phone corroborating his account of dealing with Cooley and the events on May 21, 2025. The messages

also confirmed that the Defendant was aware that Sturgill was distributing some of the pressed pills to A.L.T. Agents recovered surveillance footage from the Speedway from May 21, 2025, which showed the transaction between Sturgill and the Defendant and that the Defendant arrived in a vehicle registered to, and driven by, Nathaniel Ferguson.

(g) Sturgill subsequently purchased ten pressed blue pills from the Defendant on June 11, 2025, June 19, 2025, and July 16, 2025, for a total of 30 pills. All these transactions were in Cincinnati. Testing showed that the pills from June 11 contained fentanyl and xylazine; the pills from June 19 contained carfentanil; the pills from July 16 contained fluorofentanyl (a fentanyl analogue), fentanyl, and xylazine.

(h) Prior to the July 16, 2025 transaction, the Defendant told Sturgill that he needed to go to his source to get the pills. Surveillance agents witnessed the Defendant and Ferguson in Ferguson's vehicle in front of the Defendant's residence as Sturgill pulled up. The Defendant exited Ferguson's vehicle and made the sale to Sturgill. The Defendant then returned to Ferguson's vehicle.

(i) On July 22, 2025, agents executed a search warrant on the Defendant's Cincinnati residence. The Defendant admitted selling the pressed blue pills to Sturgill on May 21, 2025 that were supplied by Ferguson.

(j) The Defendant admits that he knowingly and intentionally distributed a mixture or substance containing a detectable amount of fentanyl to Sturgill. The Defendant further admits that A.L.T.'s use of that substance resulted in A.L.T.'s death.

4. Because death resulted from the use of the controlled substance that the Defendant distributed, the statutory punishment for Count 2 is not less than 20 years and not more than life imprisonment, not more than a $1,000,000 fine, and at least 3 years of supervised release. A mandatory special assessment of $100 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk as directed.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

(a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2025, manual, will determine the Defendant's guidelines range.

(b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes, but is not limited to, the facts set forth in paragraph 3.

(c) Pursuant to U.S.S.G. §§ 2D1.1(a)(2), the base offense level is 38 because the offense of conviction establishes that death resulted from the use of the substance.

(d) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. Because the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

(e) Pursuant to U.S.S.G. § 5E1.1, restitution to all victims of relevant conduct, not just the offense of conviction, is required and will be determined by the Court at sentencing.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4. The Defendant may argue for variances from the advisory guideline range, but the United States is free to oppose these requests.

7. The Defendant waives the right to appeal the guilty plea, conviction, and sentence that is within or below the advisory guidelines range as finally determined by the Court, including any modifications for an applicable mandatory minimum sentence. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence. In return for these waivers, the United States will not recommend a sentence above the applicable advisory guideline range, including any modifications for an applicable mandatory minimum sentence.

8. The Defendant waives all rights, whether asserted directly or by a representative, to request or to receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 522a.

9. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the investigation of this matter, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

10. The Defendant agrees to pay restitution in the amount and to the victim(s) as ordered at sentencing, pursuant to 18 U.S.C. § 3663(3). The Defendant agrees that the restitution amount may include restitution for all losses caused by the Defendant's criminal conduct or through the commission of the offense of conviction, even if such losses resulted from crimes not charged or admitted by the Defendant in the factual basis.

11. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete, sign, and return to the United States Attorney's Office a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing

any transfer of assets that has taken place within three years preceding the entry of this plea agreement. Upon request, the Defendant agrees to provide the United States Attorney's Office with records verifying his/her financial information or with any releases required to obtain such records, with such releases being valid for a period extending 90 days from the date of sentencing. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. Prior to sentencing, the Defendant agrees to notify the United States Attorney's Office and obtain its consent before transferring, encumbering, or disposing of any interest in property with a value exceeding $1,000.00 owned or controlled directly or indirectly, individually or jointly, by the Defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. The Defendant agrees to notify the United States Attorney's Office of any material changes in his/her economic circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

12. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant waives any defense or objection to any action to enforce the collection of financial obligations to be imposed in connection with this prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613. The Defendant expressly authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court. The Defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

13. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws that the Defendant committed related to this case, including any charges which the United States agreed not to pursue. The Defendant waives the right to challenge the prosecution of

additional federal charges, including any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution. The Defendant also agrees that any violation of this Agreement by him does not entitle him to withdraw his guilty plea.

14. This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. Neither the United States, nor defense counsel have made any other promises to the Defendant.

15. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

16. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

JASON D. PARMAN
FIRST ASSISTANT UNITED STATES ATTORNEY

Date: 6/1/2026 By: ______________________
Anthony Bracke
Assistant United States Attorney

Date: 5/31/26 ______________________
Ryan L. Cooley
Defendant

Date: 5/31/26 ______________________
Kerry Neff
Attorney for Defendant