**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**COVINGTON**

**CRIMINAL NO. 25-71-S-DLB-CJS-3**

**UNITED STATES OF AMERICA** **PLAINTIFF**

**V.** **SENTENCING MEMORANDUM**

**NICHOLAS A. STURGILL** **DEFENDANT**

* * * * *

The Defendant obtained pressed fentanyl pills on numerous occasions for an extended time and shared them with the victim, his girlfriend. This eventually caused the victim to fatally overdose from the use of those pills.

## I. Summary of offense:

On May 21, 2025, the Defendant obtained approximately 50 blue pressed fentanyl pills from Ryan Cooley at a Speedway in Ohio. After obtaining the pills from Cooley, the Defendant transported those pills to the Villa Hills residence in Kenton County, Kentucky, he shared with A.L.T. so that he and A.L.T. could use them. The Defendant had purchased pressed fentanyl pills from Cooley, in amounts ranging from 10 to 50 pills, approximately 30 times in the preceding year for his and A.L.T.'s use.

A.L.T. consumed some of the fentanyl pills from the May 21, 2025 transaction the following day and died. When the Defendant returned home after work, he found A.L.T. unresponsive in a bathroom in the residence. He called 911 and reported the overdose.

Agents searched the bathroom where A.L.T. was discovered and recovered a syringe from the bathroom sink and a spoon with blue powder residue from the bathroom sink drawer. They also recovered approximately 45 blue pressed pills, along with other items of drug paraphernalia from the residence. Lab testing of the pills and the residue showed that each contained fentanyl and xylazine. Toxicology showed high levels of fentanyl and xylazine in A.L.T.'s blood and the medical examiner who conducted an autopsy of A.L.T. concluded that the cause of death was an overdose of fentanyl and xylazine.

The Defendant admitted his history of obtaining pressed fentanyl pills from Cooley, including the transaction on May 21, 2025. He admitted that the blue pressed fentanyl pills recovered from their residence were from the transaction with Cooley on May 21, 2025, and that these were the pills that caused A.L.T.'s death. The Defendant showed agents text messages on his phone corroborating his account of dealing with Cooley and the events on May 21, 2025. The messages also confirmed that Cooley was aware that the Defendant was distributing some of the pressed pills to A.L.T. Agents recovered surveillance footage from the Speedway from May 21, 2025, which showed the transaction between the Defendant and Cooley and confirmed that Cooley arrived in a vehicle registered to, and driven by, Nathaniel Ferguson.

At the direction of agents, the Defendant subsequently purchased ten pressed blue pills from Cooley on June 11, 2025, June 19, 2025, and July 16, 2025, for a total of 30 pills. All these transactions were in Cincinnati. Testing showed that the pills from June 11 contained fentanyl and xylazine; the pills from June 19 contained carfentanil; the pills from July 16 contained fluorofentanyl (a fentanyl analogue), fentanyl, and xylazine.

On July 22, 2025, agents executed a search warrant on Cooley's Cincinnati residence. Cooley admitted selling the pressed blue pills to the Defendant on May 21, 2025. Cooley identified Ferguson as the source of supply for the pressed blue pills he had been distributing to the Defendant and showed agents messages with Ferguson that corroborated his statement. At the request of agents, Cooley contacted Ferguson and bought 10 additional pressed fentanyl pills from Ferguson. Agents recovered these from Cooley after the transaction and testing showed that they contained fluorofentanyl, fentanyl, and xylazine.

**II. Objections to the Presentence Report:**

The United States is unaware of any objections requiring adjudication.

**III. Sentencing Factor Analysis:**

The Defendant's advisory guideline range is 240 months, the statutory minimum term. The Defendant's conduct in this case does not support a sentence above the statutory minimum. His actions were driven by addiction, and he did not engage in the conduct for profit. The Defendant was immediately remorseful and admitted his guilt in detail to the investigating officers. This enabled them to successfully bring charges against the sources of supply.

The Defendant's personal characteristics also do not favor a sentence above the statutory minimum term. His criminal history is limited and he has a strong work history. The biggest area of concern is the Defendant's significant history of drug abuse, but this can be addressed by treatment while in custody and continuing treatment and testing as necessary during the term of supervised release.

**IV. <u>Conclusion</u>:**

The United States will make its recommendation as to the sentence to be imposed at the sentencing proceeding after reviewing the totality of the circumstances and the material offered by the defense.

Respectfully submitted,

JASON D. PARMAN
UNITED STATES ATTORNEY

By: 

Anthony J. Bracke
Assistant United States Attorney
207 Grandview Drive, Suite 400
Ft. Mitchell, Kentucky 41017
(859) 655-3200
Anthony.Bracke@usdoj.gov

**<u>CERTIFICATE OF SERVICE</u>**

On September 28, 2026, I filed this document through the ECF system, which will provide a copy of the document to counsel for all parties.

s/ Anthony Bracke
Assistant United States Attorney